SLR:KAN:es
F# 2009R01074

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

In re the Seizure of:

All funds on deposit in

Citi Smith Barney account number 344-79798-10 in the name of Abdul Wahid, up to the amount of $13,216.00;

Citi Smith Barney account number 344-16383-10 in the name of Abdul Wahid, up to the amount of $89,456.00;

Astoria Federal Savings account number 8310603798 in the name of Abdul Wahid up to the amount of $41,272.50;

and all proceeds traceable thereto

- - - - - - - - - - - - - - - - - -X

**M-10-947**

**FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT
OF SEIZURE WARRANT

Related Criminal Case:
CR-10-286 (Cogan, J.)

EASTERN DISTRICT OF NEW YORK, SS:

L. M. CAULFIELD, being duly sworn, deposes and states as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so since April 2008. I am assigned to the New York Field Office in Squad C-33. I am familiar with the facts and circumstances set forth below from my conversations with other law enforcement agents, my review of the investigative file and from reviewing reports by other law enforcement officers involved in the investigation.

2. This Affidavit is submitted in support of the government's application to seize all funds on deposit in the following accounts, up to the specified amounts, and all proceeds thereto (collectively, "the Subject Funds"): Citi Smith Barney account number 344-79798-10 in the name of Abdul Wahid ("the CSB 79798 account"), up to the amount of $13,216.00; all funds on deposit in Citi Smith Barney account number 344-16383-10 in the name of Abdul Wahid ("the CSB 16383 account"), up to the amount of $89,456.00; and all funds on deposit in Astoria Federal Savings account number 8310603798 in the name of Abdul Wahid ("the Astoria Federal Savings account"), up to the amount of $41,272.50.

3. I submit that there is probable cause to believe that the Subject Funds are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as property which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1341.

4. Because this Affidavit is being submitted for the limited purpose of obtaining a seizure warrant, I have not included each and every fact known to me concerning this investigation. In addition, to the extent I rely on statements made by others, such statements are set forth in substance and in part, unless otherwise indicated.

5. I have participated in this investigation and am thoroughly familiar with the information contained in this Affidavit, either through personal knowledge or through information provided by other law enforcement agents or the review of documents. On the basis of this familiarity, and on the basis of other information that I have reviewed and determined to be reliable, I submit that:

    a. There is probable cause to believe that Abdul Wahid ("Wahid"), also known as "Maliem Hatakay", has committed, among other offenses, the offense of mail fraud, in violation of Title 18, United States Code, Section 1341.

    b. There is probable cause to believe that the Subject Funds are traceable to the commission of the above offense.

## INVESTIGATION AND PROCEDURAL HISTORY

6. The FBI has been conducting an ongoing criminal investigation concerning Wahid. On January 14, 2010, Wahid was arrested, pursuant to a warrant signed by the Honorable Lois Bloom, United States Magistrate Judge, on charges of health care fraud in violation of Title 18, United States Code Section 1347.

7. Since the arrest of Wahid, the investigation into his criminal conduct has continued. Wahid is currently being investigated for several different crimes, among them mail fraud, in violation of Title 18 United States Code section 1341.

8. The mail fraud arises from a scheme that Wahid conducted to defraud the Human Resources Administration ("HRA") of the City of New York. HRA paid shelter allowances (the "shelter allowances") to persons who own, or are the tenants of record of, real property, who use that property to provide shelter to eligible families and individuals.

9. During the course of the investigation, the FBI learned that Wahid had received from HRA shelter allowances for certain properties for which he was neither the owner nor the tenant of record. In order to obtain the shelter allowances, Wahid falsely represented to HRA that he was the owner or the tenant of record for each of the properties. HRA paid the shelter allowances to Wahid by checks delivered through the United States mails.

10. On April 12, 2010, a grand jury in this district indicted Wahid on, among other charges, one count of mail fraud in violation of 18 U.S.C. § 1341, arising from the aforementioned scheme to defraud HRA. United States v. Abdul Wahid, 10 CR 0286 (Cogan, J.)

11. Also on April 12, 2010, the Honorable Robert M. Levy, United States Magistrate Judge, issued a warrant authorizing the seizure of $26,536.00 in funds on deposit in JP Morgan Chase bank account Number 9282157126, held in the name of Abdul Wahid, as traceable to the scheme to defraud HRA.

12. Since April 2010, the United States has made efforts to identify additional funds traceable to the scheme to defraud HRA.

13. Based upon records obtained from the City of New York, Citi Smith Barney, Astoria Federal Savings Bank and Valley National Bank, there is probable cause to believe that (a) the CSB 79798 account contains at least $13,216.00 in proceeds of the crime; (b) the CSB 16383 account contains at least $89,456.00 in proceeds of the crime, and (c) the Astoria Federal Savings account contains at least $41,272.50 in proceeds of the crime.

14. Based on information and records obtained from the City of New York, Citi Smith Barney, Astoria Federal Savings Bank and Valley National Bank, certain of these proceeds were initially deposited, in the form of checks ("the HRA checks"), into the Astoria Federal Savings account and into Valley National Bank account 1911287 in the name of Abdul Wahid ("the Valley National Bank account"). HRA has confirmed to law enforcement that the HRA checks represented payments of shelter allowances for the properties to which, the FBI has determined, Wahid is neither the owner nor tenant of record. The HRA checks were drawn on an account maintained in the name of the New York City Department of Social Services, of which HRA is a part.

15. From April 12, 2005 until May 31, 2009, a total

5

of one thousand and seventy-six (1,076) HRA checks, in the total amount of $190,485.90, were deposited into the Valley National Bank account.

16. As set forth in more detail below, at various times during the period April 2005 through January 2009, funds from HRA checks deposited into the Valley National Bank account were transferred into other financial accounts. The Valley National Bank account was closed on or about May 13, 2009.

## THE CRIMINAL PROCEEDS IN THE CSB 79798 ACCOUNT

17. From April 12, 2005 until August 8, 2005, eighty-one (81) HRA checks, in the total amount of $13,216.00, were deposited into the Valley National Bank Account.

18. On August 9, 2005, $60,000.00 of funds in the Valley National Bank account - including the $13,216.00 in funds from the HRA checks referenced in the preceding paragraph - were transferred from the Valley National Bank account to the CSB 79798 account.

19. Thus, the CSB 79798 account contains at least $13,216.00 in proceeds of the crime.

## THE CRIMINAL PROCEEDS IN THE CSB 16383 ACCOUNT

20. From August 10, 2005 until August 8, 2007, five hundred and eleven (511) HRA checks, in the total amount of $89,456.60, were deposited into the Valley National Bank Account.

21. On August 9, 2007, $100,000.00 of funds in the

Valley National Bank account -- including the $89,456.00 in funds from the HRA checks referenced in the preceding paragraph -- were transferred from the Valley National Bank account to the CSB 16383 account.

22. Thus, the CSB 16383 account contains at least $89,456.00 in proceeds of the crime.

## THE CRIMINAL PROCEEDS IN THE ASTORIA FEDERAL SAVINGS ACCOUNT

23. From August 10, 2007 until September 14, 2007, forty-five (45) HRA checks, in the total amount of $8,295.00, were deposited into the Valley National Bank Account.

24. On September 15, 2007, $5,000.00 of funds in the Valley National Bank account were transferred from the Valley National Bank account to the Astoria Federal account.

25. From September 18, 2007 until December 9, 2007, sixty (60) HRA checks, in the total amount of $9,684.30, were deposited into the Valley National Bank Account.

26. On December 10, 2007, $6,800.00 of funds in the Valley National Bank account were transferred from the Valley National Bank account to the Astoria Federal Savings account.

27. From December 12, 2007 until January 18, 2009, three hundred and forty-seven (347) HRA checks, in the total amount of $63,679.00, were deposited into the Valley National Bank Account.

28. On January 20, 2009, $9,500.00 of funds in the

Valley National Bank account were transferred from the Valley National Bank account to the Astoria Federal Savings account.

29. Thus, the total amount of criminal proceeds transferred from the Valley National Bank account to the Astoria Federal Savings account was at least $21,300.00.

30. The Astoria Federal Savings account also contains additional proceeds of the crime, because HRA checks were deposited directly into the Astoria Federal Savings account. From April 12, 2005 until October 31, 2006, one hundred and twenty two (122) HRA checks, in the total amount of $19,972.50, were deposited into the Astoria Federal Savings account.

31. Thus, the Astoria Federal Savings account contains at least $41,272.50 in proceeds of the crime -- $21,300.00 in proceeds transferred from the Valley National Bank account and $19,972.50 in proceeds of HRA checks deposited directly into the Astoria Federal Savings account.

## CONCLUSION

32. I respectfully request that the Court issue a warrant, pursuant to Title 18, United States Code, Section 981(b) and Title 21, United States Code, Section 853(f), authorizing the seizure of the Subject Funds.

33. Based upon the foregoing, it is submitted that there is probable cause to believe that Wahid used the United

States mails in furtherance of a scheme to defraud HRA, in violation of Title 18, United States Code, Section 1341. It is further submitted that there is probable cause to believe that the Subject Funds are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(c), and Title 28 United States Code, Section 2461(c) as property which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1341. A restraining order, pursuant to Title 21, United States Code, Section 853(e), will not be sufficient to preserve the assets in question given the ease with which funds may move out of the accounts containing the Subject Funds (via wire, internet banking, etc.).

34. Because this Affidavit is submitted in connection with an ongoing investigation that would be jeopardized by premature disclosure of the foregoing, I request that this Affidavit, the attachments, and all related documents be filed under seal until further order of the Court, except that copies of the seizure warrant may be served at the time they are executed, and that the government may provide copies of the warrants and this Affidavit as required by its discovery

obligations, including those under Rule 16 of the Federal Rules of Criminal Procedure.

```
                              L.M. CAULFIELD
                              Special Agent
                              Federal Bureau of Investigation
```

Sworn to before me this
19 day of August, 2010

UNITED STATE.
EASTERN DISTI    s/ Orenstein

10